## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA
## NORTHUMBERLAND DIVISION

| | | |
|---|---|---|
| MICHAEL MACHUZAK, individually and on behalf of all others similarly situated, | ) ) ) ) | **Case No.** |
| PLAINTIFF, | ) ) ) | _____ |
| vs. | ) ) | **CLASS ACTION COMPLAINT** |
| IKO MANUFACTURING INC., a Delaware corporation; IKO INDUSTRIES INC., a Delaware Corporation; IKO INDUSTRIES LTD., a Canadian Corporation; IKO MIDWEST INC., an Illinois corporation; and IKO PRODUCTION INC., a Delaware corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **(JURY TRIAL DEMANDED)** |
| DEFENDANTS. | ) | |

Plaintiff Michael Machuzak, by and through his undersigned counsel, on behalf of himself and all other persons and entities similarly situated, alleges:

### INTRODUCTION AND SUMMARY OF ACTION

1.     Plaintiff, Michael Machuzak ("Plaintiff"), brings this action both individually and as a proposed class action against Defendants, IKO Manufacturing Inc., IKO Industries Inc., IKO Industries Ltd., IKO Midwest Inc., and IKO

Production Inc. ("Defendants" or "IKO"), on behalf of himself and all other similarly situated persons and entities, who currently own, per the class definition, IKO Shingles (hereinafter collectively referred to as the "Class" or "Class Members").

2.    Plaintiff and the Class are owners of organic-based or matted shingles manufactured and/or distributed under various trade names by Defendants.

3.    As discussed in more detail *infra*, Defendants manufactured, advertised, sold, and distributed organic shingles ("IKO Shingles" or "Shingles") throughout the United States, but primarily in northern and south-eastern United States between approximately 1979 and 2007.

4.    At all relevant times, Defendants marketed, sold and/or advertised the IKO Shingles as durable, and as offering long-lasting protection for a specified life ranging from twenty (20) to fifty (50) years, or in some cases, for a lifetime. Defendants marketed and sold the organic IKO Shingles to numerous consumers throughout the United States.

5.    The organic materials contained in the Shingles are susceptible to becoming wet, moist, saturated, or otherwise invaded by water and then the IKO Shingles crack, curl, blister, fishmouth, claw, and become discoloured ("Defect"). Because IKO Shingles are defective they cause damage to the roof and to the underlying structures. The shingles are non-conforming to industry standards. The organic materials are defective as designed and manufactured as they fail prematurely due to moisture invasion at rates well beyond what should be occurring with a

product meant for the outdoors, and well beyond what consumers expected based upon Defendants' representations.

6.      The defects present in IKO Shingles are so severe that Plaintiff and Class members must repair or replace their shingles and/or roofs sooner than reasonably expected by ordinary consumers who purchase shingles generally and by consumers who purchased IKO Shingles specifically.

7.      IKO Shingles are uniformly defective such that Plaintiff's and Class members' Shingles are failing before the time periods advertised, marketed, and guaranteed by IKO or otherwise expected by ordinary consumers purchasing Shingles.

8.      Defendants knew about the Defect while simultaneously placing the Product in the market and continuing its marketing campaign and representations.

9.      Defendants have made specific and material misrepresentations regarding the qualities of its IKO Shingles.

## PARTIES

10.     Plaintiff Michael Machuzak is, and at all times relevant hereto, has been a citizen and resident of Pennsylvania. Specifically, Plaintiff resides in Marion Heights, Pennsylvania. Plaintiff purchased and installed defective IKO Shingles on his home.

11.     Plaintiff discovered that his IKO Shingles are cracking, blistering, and have granule loss because of the Defect. Accordingly, Plaintiff must replace his IKO

Shingles as well as repair other property damage caused by Defendants' defective IKO Shingles at a significant cost.

12.     Defendant IKO Manufacturing Inc. is a Delaware corporation and operates a manufacturing plant in Wilmington, Delaware.  IKO is a leading North American manufacturer of roofing materials.  The company operates manufacturing plants in the United States, Canada, and Europe.

13.     Defendant IKO Industries Ltd. is an Alberta corporation and leading North American manufacturer and distributor of roofing materials and the parent company of Defendant IKO Manufacturing, Inc.  IKO Industries Ltd. is the owner of several patents that may apply to the Shingles manufactured by IKO Manufacturing.  The company operates manufacturing plants in Canada, and its Shingles were distributed in the United States.

14.     Defendant IKO Midwest, Inc. is a Delaware corporation with significant business operations located in Kankakee, Illinois.  IKO Midwest, Inc. manufactures, distributes, and sells IKO Shingles throughout of the United States.

15.     Defendant IKO Industries, Inc. is a Delaware corporation that imports Canadian-made IKO Shingles to the United States.

16.     Defendant IKO Production, Inc. is a Delaware corporation with significant business operations in Wilmington, Delaware, where it manufactures, distributes, or sells IKO Shingles.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and cost, and because Defendants are citizens of another State.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff and members of the proposed Class reside in this District. Furthermore, Defendants regularly transact and solicit business in this District.

## COMMON FACTUAL ALLEGATIONS

19.     Defendants are leading manufacturers of Shingles in North America.

20.     Defendants have sold, directly or indirectly (through distribution/trade partners), IKO Shingles that have been installed in thousands of homes in the United States and the State of Pennsylvania.

21.     All IKO Shingles are manufactured using the same basic formula: a base layer of organic felt saturated with asphalt, a middle layer of an oxidized asphalt coating, and a top layer of mineral granules with a strip of asphalt sealant.

22.     Defendants designed, manufactured, marketed, advertised, warranted, distributed and sold its IKO Shingles throughout much of the United States, including Pennsylvania.

23.     Through various forms of media (including, by way of example, television, print ads, brochures, the Internet, on-site brochures and promotional documents, catalogs, and/or product labelling) as well as by oral affirmations that

were available to Plaintiff and the general public, Defendants marketed, advertised and warranted that the IKO Shingles were merchantable, fit for the ordinary purpose for which such goods were used and were free from defects in materials and workmanship.

24.    Defendants' marketing and advertising strategy is to represent IKO Shingles as durable and as offering long-lasting protection for a specified life ranging from twenty (20) to fifty (50) years, or in some cases, for a lifetime.

25.    Through sales brochures, internet websites and marketing literature, which were widely distributed to building professionals and were available to Plaintiff, Class Members and the general public, Defendants represented that the IKO Shingles are, among other things, "[t]ime-tested and true" and "an excellent choice for exceptional roofing value."

26.    These representations described herein are not sales puffery, but instead convey information regarding the durability and performance of the IKO Shingles.

27.    Unfortunately for Plaintiff and thousands of consumers across the United States, IKO Shingles have not lived up to these promises.

28.    All IKO Shingles are uniformly defective such that Plaintiff's and Class members' Shingles are failing before the time periods advertised, marketed, and guaranteed by Defendants.

29.    Defendants knew that Plaintiff and Class Members, and the developers, builders, contractors, and/or subcontractors of Plaintiff's and Class Members'

structures would rely upon Defendants' representations, marketing and warranties regarding the quality of the IKO Shingles.

30.      Plaintiff and Class Members, and/or the developers, builders, contractors and/or subcontractors of Plaintiff's and Class Members' structures relied upon Defendants' representations, marketing and warranties when purchasing the IKO Shingles.

31.      IKO Shingles are defective as manufactured such that they fail prematurely due to moisture invasion.  The Shingles crack, curl, blister, and otherwise deteriorate, blow off roofs and do not perform in accordance with the reasonable expectations of consumers that such products be durable and suitable for use as a roofing product.

32.      Due to the Defect in the IKO Shingles, Plaintiff and Class Members must pay for removal and replacement. As a result, the IKO Shingles do not have the value or quality indicated by Defendants' representations.

33.      Further, through its warranty and statements in marketing and advertising materials, Defendants created a reasonable expectation among Plaintiff, Class Members and ordinary consumers that the IKO Shingles would have a usable life of at least twenty (20) years.

34.      However, notwithstanding its representations, Defendants did not make it known that the anticipated life of the IKO Shingles is far less than twenty (20) years.

35.     Through its sales brochures and marketing literature, Defendants represented that the IKO Shingles would last at least twenty (20) to fifty (50) years, or in some case, for a lifetime, without problems.  Furthermore, Defendants described their warranty as "IRON CLAD" and further claimed IKO was "Setting the Standard" for "quality, durability, and innovation."

36.     Defendants knew or should have known that its IKO Shingles were defective in design and manufacture, were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers.

37.     The Defect in the IKO Shingles affects the structures on which it is installed resulting in, including but not limited to: damage to underlying felt, damage to structural roof components, damage to plaster and sheetrock, and damage to walls, ceiling, and structural components.

38.     The Defect reduces the effectiveness and performance of the IKO Shingles and renders them unusable for the ordinary purposes for which they were intended.

39.     Further, the Defect allows for the IKO Shingles to damage other surrounding property.

40.     Plaintiff, the Class Members, and/or their predecessors, builders, and/or assignors would not have purchased and/or would not have authorized the purchase

of the IKO Shingles for installation in their homes had they known or been informed of the Defect in the IKO Shingles.

41.     Defendants knew or should have known of the Defect within the IKO Shingles and the potential for cracking, curling, blistering, and otherwise deteriorating, blowing off roofs and not performing in accordance with the reasonable expectations of consumers from said defect.

42.     Despite such knowledge, Defendants continued to manufacture, distribute, market and sell the IKO Shingles to unsuspecting consumers, builders and/or homeowners across the state of Pennsylvania as well as the United States.

43.     Further, despite such knowledge, Defendants failed to notify all owners of the IKO Shingles of the Defect or provide uniform relief even though Defendants can identify substantially all of its customers who have IKO Shingles (through the records of Defendants and its distribution/trade partners).

44.     Instead, Defendants have concealed, suppressed, omitted, or otherwise knowingly and intentionally failed to disclose to Plaintiff and the Class Members that there is an inherent Defect in the IKO Shingles.

45.     Consumers, including Plaintiff and the Class Members, reasonably expect that their Shingles will not crack, curl, blister, and otherwise deteriorate.

46.     Further, consumers reasonably expect that if Defendants knew about the inherent Defect:

        (a) that a manufacturer such as Defendants would make a disclosure to

consumers if it determined that the risk was substantial; and

(b) that a manufacturer such as Defendants would repair the latent defect(s) – even if the defect(s) did not exhibit until after expiration of the warranty period – because the potential causes of the defect are within the control and responsibility of the manufacturer (not the consumer).

47.     Even though Defendants can identify substantially all of its customers who have the defective IKO Shingles, Defendants have never: (1) publicized the defective nature of the IKO Shingles; (2) taken affirmative steps to notify its customers that the IKO Shingles were defective and could potentially cause damage to other property in proximity to the roof; and/or (3) recalled the defective IKO Shingles.

48.     In sum, Defendants, prior to the sale to Plaintiff and the Class Members, should have disclosed that there was a Defect with the IKO Shingles. Nevertheless, Defendants failed to disclose the Defect and thereby deprived consumers of the opportunity to negotiate additional warranty coverage which would have included labor to repair/replace the IKO Shingles, negotiate a lower price to reflect the risk or simply avoid the risk altogether by purchasing a different manufacturer's shingles. Plaintiff and the Class Members have been damaged in the amount it will cost, or they paid, to remove and replace the IKO Shingles.

## Defendants' IKO Shingles Warranty

49.    Plaintiff's and the Class Members' IKO Shingles were sold with a warranty.  The warranties are marketed and create an expectation within the industry and by ordinary consumer purchased that the IKO Shingles will last as long as the warranty period.

50.    IKO generally charged more to the Plaintiff and Class members as the warranty period increased in length thereby creating the expectation that a longer warranty period advertised and guaranteed had meaning.

51.    Plaintiff and Class Members have not received the value for which they bargained for when they purchased the IKO Shingles.

52.    Defendants established a warranty period to be advertised and guaranteed for its Shingles without conducting appropriate testing to determine if the Warranty period was supported by actual or simulated use.  As to some of the Shingles, it appears that IKO increased the duration of the warranty period without making any substantial changes to the design or manufacturing process of its Shingles and without further or appropriate testing.

53.    Defendants did not use a process or formula for determining the length of its warranties, but rather extended the length of warranties as the business environment changed so that Defendants would not be put at a marketing disadvantage vis-à-vis its competitors.

54.     Generally, as Defendants' competitors began to offer longer warranty periods for similar shingles, Defendants lengthened the warranty period of its Shingles without adequate or appropriate testing to determine if the increase of warranty was justified, supportable, or otherwise true.

55.     There is a substantial difference in value between the IKO Shingles as represented and warranted and the IKO Shingles as purchased coupled with an ineffective warranty.

56.     Defendants use an overly burdensome warranty claim process that is designed to deter warranty claimants from filing, and reduce the number of "valid" claims that it receives.  Much of the information that Defendants require is not available to homeowners, especially those who purchased a new home from a builder, or were not the original owners of the roof.

57.     Defendants will not consider a warranty claim until a customer submits all of the following information to the company:

    a.  Proof of purchase of an IKO product indicating the type of shingle, quantity, and date in which a roof was applied;

    b.  Proof of purchase indicating the claimant is the original owner of the home;

    c.  Date shingles were applied;

    d.  Number of shingles applied;

    e.  Number of shingles involved in the claim;

f.  Type of roof deck;

g.  The number of layers of shingles on the roof;

h.  The slope of the roof deck;

i.  The number of vents on the roof;

j.  Photographs of the roof that were not taken from a digital camera; and

k.  Two full shingle samples (which requires a roofing professional to carefully remove in-service shingles from the claimant's roof).

58.  Instead of providing compensation based upon the terms of the warranty, Defendants intentionally mislead warranty claimants, including Plaintiff and Class members, by requiring them to sign a Goodwill Release of Warranty ("Goodwill Release") in exchange for cash compensation.

59.  The consideration offered by Defendants in exchange for a signed Goodwill Release is woefully inadequate to compensate claimants for Defendants' defective Shingles because it does not cover the full cost of replacement of the shingles, labor, disposal, or other related costs incurred by Plaintiff and Class members.

60.  The Goodwill Release is not compensation under the terms of the warranty, but rather "represents the compromise of a disputed claim."  In essence, it is Defendants' routine business practice to dispute every warranty claim submitted to the company, even though it had actual or constructive notice that its Shingles are defective pursuant to their very own requirements.

13

61.     The Goodwill Release operates as a waiver of the warranty, and releases Defendants from "any and all claims, causes of action, agreements, promises, damages and demands,… of any kind or nature whatsoever… which the [warranty claimant] ever had or now has against IKO…"

62.     The Goodwill Release is Defendants' attempt to "buy off" any future claims relating to its Shingles and relieve itself of the burden and responsibility of future warranty claims concerning any possible remaining Shingles on a warranty claimant's roof.

63.     The consideration offered for an executed Goodwill Release is based upon a fraction of the cost of replacing only the shingles that exhibit the defect at that time, but the Goodwill Release waives the warranty on the entire roof, regardless of whether the claimant was compensated for the release.

64.     Despite receiving a litany of complaints from consumers like Plaintiff, Defendants refuse to inform owners about the Defect in the IKO Shingles.

65.     Because of the ongoing Defect of the IKO Shingles and Defendants refusal to disclose the Defect, owners of the IKO Shingles have suffered actual damages.

66.     At all relevant times, Defendants had a duty at sale and a continuing duty to disclose that the IKO Shingles had a Defect, were prone to foreseeable and uniform problems, and otherwise were inherently flawed.

67.     The Defect in the IKO Shingles is latent and not detectable until after it manifests.

68.     Plaintiff and Class Members could not reasonably discover, even with the exercise of due diligence, that there was a Defect until after the IKO Shingles were purchased and installed.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS/REPOSE

69.     Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of fraudulent concealment.

70.     Defendants knew or reasonably should have known their IKO Shingles were defective before their sale. Defendants intentionally concealed material information and the truth concerning IKO Shingles from Plaintiff, Class Members and the general public while continuing to assert that IKO Shingles were a durable, long-lasting product.

71.     Defendants affirmatively represented to the general public that the IKO Shingles carried a specified life ranging from twenty (20) to fifty (50) years, or in some cases, for a lifetime.  Through these representations, Defendants created a reasonable expectation, among ordinary consumers, that IKO Shingles would have a useable life of at least (20) twenty years.

72.     Defendants have actively concealed from owners of IKO Shingles and/or failed to alert the owners of the defective nature of IKO Shingles and that the

Defect would result in the IKO Shingles deteriorating well before their expected life-time.

73.    Defendants had a duty to inform Plaintiff and Class Members of the Defect described herein, which it knew or should have known. Notwithstanding its duty, Defendants never disclosed the Defect to Plaintiff, the Class Members and/or the general public.

74.    Despite exercising reasonable diligence, Plaintiff and the Class Members could not have discovered the defective condition of the IKO Shingles.

75.    Based upon Defendants' misrepresentations and concealment of this non-public information about the defective IKO Shingles– information over which it had exclusive control – and because Plaintiff and the Class Members therefore could not reasonably have known that IKO Shingles were defective, Defendants are equitably estopped from relying on any statutes of limitations and/or repose that might otherwise be applicable to the claims asserted herein.

76.    In addition, the doctrine of equitable tolling also prevents Defendants from relying upon statutes of limitations and/or the statute of repose.

77.    Alternatively, to the extent Defendants made statements that induced Plaintiff and Class Members to await whether Defendants would provide a remedy for the failure of IKO Shingles, Defendants are equitably estopped from asserting a statute of limitations/repose defense.

## CLASS ALLEGATIONS

78.     Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure on behalf of themselves and the following Class:

> **All individuals and entities that have owned, own, or acquired homes, residences, buildings, or other structures physically located in the United States on which IKO Shingles are or have been installed. IKO Shingles are defined to include without limitation all asphalt shingles manufactured or distributed by Defendants.**

79.     Alternatively, or in addition to the nationwide class claims, Plaintiff

proposes a class consisting of the following:

> **All persons and entities that own homes, residences, buildings, or other structures physically located in Pennsylvania on which IKO Shingles are or have been installed. IKO Shingles are defined to include without limitation all asphalt shingles manufactured or distributed by Defendants.**

80.     As defined above, this complaint collectively refers to these proposed

classes as "the Class."

81.     Excluded from the Class are: (a) any Judge or Magistrate presiding over

this action and members of their families; (b) Defendants and any entity in which

Defendants have a controlling interest or which has a controlling interest in

Defendants and its legal representatives, assigns and successors of Defendants and

Defendants employees; and (c) all persons who properly execute and file a timely

request for exclusion from the Class or are currently in litigation with Defendants.

82.   Plaintiff proposes the Class be divided into subclasses if and as necessary to align class interests.

83.   Plaintiff reserves the right to re-define the Class or Subclasses prior to class certification.

84.   *Numerosity*: The Class is composed of thousands of persons geographically dispersed throughout the United States and the State of Pennsylvania, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Class is reasonably ascertainable and identifiable from Defendants' records, Defendants' customer records, and/or identifying marks on the IKO Shingles.

85.   *Commonality*: Questions of law and fact common to the Class exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual issues include the following:

(a)   Whether the IKO Shingles are defective;

(b)   Whether the IKO Shingles have not performed or will not perform in accordance with the reasonable expectations of ordinary consumers;

(c)   Whether Defendants knew or should have known of the Defect of the IKO Shingles;

(d)   Whether Defendants concealed from consumers and/or failed to disclose to consumers the Defect in the IKO Shingles;

(e)   Whether Defendants have acted or refused to act on grounds generally applicable to the Classes;

(f)   Whether Defendants should be declared financially responsible for failure to notify all Class Members of the defective nature of the IKO Shingles and to pay the full costs and expenses of replacement of the

shingles and/or roof;

(g)   Whether Defendants knew or became aware that its IKO Shingles were defective, yet continued to manufacture, distribute, advertise, market and sell the Shingles without: (1) informing consumers, builders and/or homeowners of the material Defect; (2) recalling the defective; or (3) otherwise repairing the defective shingles that had already been purchased;

(h)   Whether Plaintiff and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for replacement of Shingles and/or installation costs as well as replacement of other property damage caused by the defective shingles; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the IKO Shingles as warranted and the IKO Shingles as purchased; and (iii) the reasonable costs to remove and replace the shingles and to repair consequential damages;

(i)   Whether Defendants negligently designed and/or manufactured the IKO Shingles;

(j)   Whether Plaintiff and the Class are entitled to replacement of their defective IKO Shingles with non-defective shingles;

(k)   Whether the IKO Shingles fail to perform as advertised or warranted;

(l)   Whether Defendants breached their duties to Plaintiff and the Class by designing, manufacturing, producing, marketing, advertising and selling defective IKO Shingles to Plaintiff and the Class;

(m)   Whether Defendants breached their express warranties to Plaintiff and the Class by selling defective IKO Shingles to Plaintiff and Class and then refusing to cover the full costs associated with replacing the IKO Shingles;

(n)   Whether Defendants breached their implied warranties to Plaintiff and the Class by selling defective IKO Shingles to Plaintiff and Class and then refusing to cover the full costs associated with replacing the IKO Shingles;

(o)     Whether the limitations in Defendants' warranty are unconscionable or unenforceable;

(p)     Whether Defendants changed or altered its warranty program without notice to the Plaintiff and the Class.

(q)     Whether Plaintiff and the Class are entitled to restitution and disgorgement from Defendants; and

(r)     Whether Plaintiff and the Class are entitled to prejudgment interest, attorneys' fees and costs from Defendants.

86.     *Typicality*:     Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective IKO Shingles, Defendants' conduct in concealing the defective condition of the IKO Shingles, and Plaintiff's and Class Members' purchasing the defective IKO Shingles.

87.     *Adequate Representation*:          Plaintiff will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of construction defect claims and complex litigation, including consumer class actions involving product liability and product design defects.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial resources to do so.

88.     *Predominance and Superiority*:     This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is

superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court and Courts throughout the United States and/or Pennsylvania would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

89.     Class certification is appropriate because Defendants engaged in a uniform and common practice. All Class Members have the same legal right to and interest in redress for damages associated with the defective IKO Shingles.

90.     All conditions precedent for the filing of this action have been met.

## COUNT I
## NEGLIGENCE

91.     Plaintiff realleges and incorporates each of the preceding allegations as though fully set forth herein.

92.     Defendants were under a duty to exercise reasonable care to test, design, manufacture, warranty, market and distribute IKO Shingles for their intended use.

93. Defendants breached their duty and were negligent in its testing, designing, warranting, manufacturing, distributing and/or marketing of their IKO Shingles as described herein.

94. Defendants knew or should have known that the IKO Shingles were defective, that they would fail prematurely, that they contained the Defect, that it was not suitable as an exterior product and that it otherwise did not conform to its warranties and representations.

95. Because of Defendants' negligence, Plaintiff and the Class suffered damages, including but not limited to damage to underlying structures or adjoining property caused by the deterioration or failure of the IKO Shingles, and any other compensatory or consequential damages.

96. Plaintiff and the Class have suffered damages in the need to remove and replace the IKO Shingles.

97. As a direct, proximate, reasonably probable and foreseeable consequence of Defendants' negligent acts and/or omissions in connection with its testing, design, manufacture and distribution of its IKO Shingles, Plaintiff and the Class Members have suffered and will continue to suffer loss and damage to their residences, structures, and property.

## COUNT II
## STRICT PRODUCTS LIABILITY—DEFECTIVE DESIGN & MANUFACTURE

98.     Plaintiff realleges and incorporates each of the preceding allegations as though fully set forth herein.

99.     IKO Shingles were designed, manufactured, marketed, promoted, sold, and introduced into the stream of commerce by Defendants.

100.    When it left the control of Defendants, IKO Shingles were expected to, and did reach Plaintiff and Class Members without substantial change from the condition in which they left Defendants' control.

101.    IKO Shingles were defective when they left Defendants' control and were placed in the stream of commerce, in that there were foreseeable defects in the design and/or manufacture of the product.

102.    Specifically, the IKO Shingles were unfit for their intended use, and contained defects which caused the product crack, curl, blister, and otherwise deteriorate, causing damages to Plaintiff's and the Class Members' residences/structures.

103.    Plaintiff and Class Members used and installed the IKO Shingles in substantially the same condition they were in when they left the Defendants' control, and in the manner intended.

104.    Defendants' IKO Shingles fail to perform in accordance with the reasonable expectation of Plaintiff, the Class, and ordinary consumers, and the

benefits of the IKO Shingles do not outweigh the risk of their failure.

105.    As a direct and proximate result of Defendants' defective design and/or manufacture of IKO Shingles, Plaintiff and Class Members suffered damages and economic loss.

106.    Defendants are strictly liable to Plaintiff and Class Members for all damages and economic losses resulting from its defective design and/or manufacture of IKO Shingles.

## COUNT III
## BREACH OF CONTRACT

107.    Plaintiff realleges and incorporates each of the preceding allegations as though fully set forth herein.

108.    Upon purchasing IKO shingles, Plaintiff and Class members, whether directly or through the developers, builders, contractors and/or subcontractors of Plaintiff's and Class Members' structures, entered into a contract and warranty agreement with Defendants.

109.    Defendants have uniformly breached their contracts and warranty agreement with Plaintiff and members of the Class by failing to supply a product that was of merchantable quality and fit for the use for which it was intended and by failing to repair and/or replace defects in the IKO Shingles.

110.    As a proximate result of the aforementioned wrongful conduct and breach committed by Defendants, Plaintiff and the Class members have suffered and

will continue to suffer damages and economic loss in an amount to be proven at trial. Plaintiff and Class members are entitled to damages and injunctive and declaratory relief as claimed below.

## COUNT V
## BREACH OF EXPRESS WARRANTY

111.    Plaintiff realleges and incorporates each of the preceding allegations as though fully set forth herein.

112.    Defendants marketed and sold their IKO Shingles into the stream of commerce with the intent that the IKO Shingles would be purchased by homeowners, developers, contractors, subcontractors, and other consumers for installation on structures owned and bought by Plaintiff and the Class.

113.    Defendants expressly warranted that their Shingles are permanent, impact resistant, and would maintain their structural integrity. Defendants' representations through its written warranties regarding the durability of, and the quality of the Shingles created express warranties that became part of the basis of the bargain Plaintiff, Class members, builders, and developers entered into when they purchased the Shingles.

114.    Defendants created express warranties for the IKO Shingles through their sales brochures and marketing materials. These warranties have full force and effect.

115.    Defendants breached their express warranties because the IKO Shingles do not perform as promised. The IKO Shingles contain the Defect and are not suitable for use as an exterior shingle product.

116.    Defendants breached their express warranties to Plaintiff and Class members in that Defendants' Shingles are neither permanent nor impact resistant and did not, and do not, maintain their structural integrity and perform as promised. Defendants' IKO Shingles crack, split, curl, warp, discolor, delaminate, blow off the roof, deteriorate prematurely, and otherwise do not perform as warranted by the Defendants.

117.    Defendants' warranties fail their essential purpose because they warrant that the Shingles will be free from structural breakdown for at least twenty (20) years to as much as a lifetime when, in fact, Defendants' IKO Shingles fail far short of the applicable warranty period.

118.    The warranties limit Plaintiff's and Class members' recovery to replacement of the Shingles piece by piece, with replacement labor not included, Defendants' warranties are inadequate to repair and replace failed roofing, let alone any damage suffered to the underlying structure.

119.    The limitations and exclusions in Defendants' warranties are unconscionable and unenforceable.

120.    Defendants denied or failed to pay all costs and damages associated with replacing the IKO Shingles.

121.  Plaintiff and Class members, and/or the developers, builders, contractors and/or subcontractors of Plaintiff's and Class members' structures relied on Defendants' express warranties to the detriment of Plaintiff and Class members.

122.  Because of Defendants' breach of warranty, Plaintiff and Class members suffered damages, including but not limited to any damage to underlying structures or adjoining property caused by the deterioration or failure of the IKO Shingles, and any other compensatory or consequential damages. Plaintiff and Class members reserve their right to seek all damages available by statute or law.

123.  Plaintiff and Class members demand judgment against Defendants for an amount to be determined at trial.

## COUNT V
## BREACH OF IMPLIED WARRANTIES

124.  Plaintiff realleges and incorporates each of the preceding allegations as though fully set forth herein.

125.  When Defendants designed, manufactured, marketed, sold, and distributed their IKO Shingles for use by Plaintiff and Class members, and/or the developers, builders, contractors and/or subcontractors of Plaintiff's and Class members' structures, Defendants knew of the use for which it was intended and impliedly warranted the product to be of merchantable quality and fit for such use and that its design, manufacture, labeling, and marketing complied with all applicable requirements.

27

126.    Plaintiff and Class Members, and/or the developers, builders, contractors and/or subcontractors of Plaintiff's and Class Members' structures reasonably relied upon the Defendants' representations of the product's merchantable quality and that it was safe for its intended use, and upon Defendants' implied warranty, including that it was in compliance with all applicable requirements.

127.    Contrary to such implied warranties, IKO Shingles are not of merchantable quality or fit for its intended use because the product is defective, as described herein, and it is unsuitable for use as an exterior shingle product.

128.    As a direct and proximate result of breach of warranty, Plaintiff and Class members have been damaged, and are entitled to all damages, in addition to costs, interest and fees, including attorney's fees as allowed by law.

## COUNT VI
## FRAUDULENT MISREPRENTATION

129.    Plaintiff realleges and incorporates each of the preceding allegations as though fully set forth herein.

130.    Throughout Defendants' advertising and marketing materials, Defendants falsely and fraudulently represented to Plaintiff and Class Members, and/or the developers, builders, contractors and/or subcontractors of Plaintiff's and Class Members' structures, as well as  the consuming public in general that IKO Shingles would be free from defects and fit for its customary and normal use.

131.    Those representations made by Defendants were, in fact, false.

132.    When said representations were made by Defendants, upon information and belief, it knew those representations to be false and it willfully, wantonly, and recklessly disregarded whether the representations were true. Further, Defendants actively concealed and/or omitted material facts regarding the IKO Shingles about the Defect.

133.    These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiff Class members, and the consuming public.

134.    At the time the aforesaid representations were made by Defendants, Plaintiff and Class Members, and/or the developers, builders, contractors and/or subcontractors of Plaintiff's and Class Members' structures were unaware of the falsity of said representations and reasonably believed them to be true.

135.    In reliance upon said representations, IKO Shingles were purchased, installed and used on Plaintiff's and Class members' structures, thereby sustaining damage and/or being at an increased risk of sustaining damage in the future.

136.    Defendants knew and were aware, or should have been aware, that IKO Shingles were defective and not fit for their customary and normal use.

137.    Defendants knew, or should have known, that IKO Shingles had a potential to, could, and would cause damage to Plaintiff's and Class members' structures.

138.    Defendants brought IKO Shingles to the market and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff and Class members.

29

139.    By reason of the foregoing, Plaintiff and Class members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorney's fees as allowed by law.

**COUNT VII**
**FRAUDULENT CONCEALMENT AND TOLLING**

140.    Plaintiff realleges and incorporates each of the preceding allegations as though fully set forth herein.

141.    The Defendants actively concealed the fact that the IKO Shingles were defective. The defective nature of the IKO Shingles caused (or will cause) injury to the property of the Plaintiff and Class.

142.    The Defendants took active and affirmative steps to prevent Plaintiff and Class members from learning about the defective nature of the IKO Shingles, including keeping their internal knowledge and communications about the IKO Shingles secret and non-public.

143.    At all times mentioned herein, Defendants had a duty and obligation to disclose the true facts concerning the IKO Shingles to the public; that is that IKO Shingles were defective, would prematurely fail, and otherwise were not as warranted and represented by Defendants.

144.    The Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth from the public with the intent to defraud as herein alleged.

30

145.     Plaintiff and the Class members exercised reasonable diligence under the circumstances, but was unable—given the Defendants' concealment—to discover the defective nature of the IKO Shingles and the wrongful conduct of the Defendants.

146.     As a direct and proximate result of the Defendants' fraudulent concealment, the Plaintiff and the Class sustained the damages set forth in this complaint. Indeed, the concealment caused a delay in discovering the defective nature of the IKO Shingles.

147.     As a further direct and proximate result of the Defendants' fraudulent concealment, the Plaintiff and Class were unable to discover their injuries of learn of their cause of action. As such, under the doctrine of equitable tolling, the statute of limitations and/or repose for each claim alleged in this complaint did not begin to run until that date.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

148.     Plaintiff realleges and incorporates by reference herein each of the allegations set forth in this Complaint as though fully set forth herein.

149.     Defendants falsely represented to Plaintiff and Class members, and/or the developers, builders, contractors and/or subcontractors of Plaintiff's and Class members' structures, as well as to the consuming public in general that IKO Shingles would be free from defects and fit for its customary and normal use.

150.     These representations made by Defendants were, in fact, false.

31

151.   The Defendants made the foregoing representations without any reasonable ground for believing them to be true.

152.   These representations were made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written materials directed to the public, with the intention of inducing reliance and the purchase, installation, and use of the IKO Shingles.

153.   In reliance of the misrepresentations by the Defendants, and each of them, Plaintiff and Class Members, and/or the developers, builders, contractors and/or subcontractors of Plaintiff's and Class Members' structures were induced to purchase and install IKO Shingles.  If the true facts and the facts concealed by the Defendants had been known, Plaintiff and Class members, and/or the developers, builders, contractors and/or subcontractors of Plaintiff's and Class members' structures would not have purchased or installed IKO Shingles.

154.   The reliance of Plaintiff and Class members, and/or the developers, builders, contractors and/or subcontractors of Plaintiff's and Class members' structures upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

155.   As a result of the foregoing negligent misrepresentations by Defendants, Plaintiff and Class members suffered injuries and damages as alleged herein, and are entitled to all damages, in addition to costs, interest and fees, including attorney's fees

as allowed by law.

## COUNT IX
## UNJUST ENRICHMENT
### (Pleading in the Alternative)

156.    Plaintiff incorporates by reference herein each of the allegations set forth in this Complaint as though fully set forth herein.

157.    Pleading in the alternative, Defendants received a benefit with the purchase of IKO Shingles installed on the structures owned by Plaintiff and the Class members.

158.    Plaintiff and Class Members, however, did not receive effective or ordinarily fit exterior shingles materials for which Defendant was paid.

159.    Substantial benefits were conferred on Defendants and Defendants has appreciated these benefits.

160.    It would be inequitable for the Defendants to retain this money, because Plaintiff and Class members did not, in fact, receive exterior shingle materials fit for ordinary use.

161.    By virtue of the wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of Plaintiff and Class members, who hereby seek the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

## COUNT XI
## DECLARATORY RELIEF

162.   Plaintiff, individually and on behalf of all others similarly situated, realleges and incorporates by reference all foregoing allegations as though fully set forth herein.

163.   Plaintiff and the Class seek declaratory relief as to the following:

a.   Whether the IKO Shingles are defective.

b.   Whether Defendants knew or had reason to know that the IKO Shingles were defective.

c.   Whether limitations in Defendants' warranty are unconscionable or unenforceable.

d.   Whether Defendants have made deceptive or false representations regarding the characteristics or benefits of the IKO Shingles.

e.   Whether Defendants have handled previous warranty claims in a manner consistent with the terms of its warranties, and if not, what procedures are necessary to audit or reexamine previous warranty claims.

f.   Whether procedures are needed to preserve the rights of Class members who face prospective failure of the IKO Shingles.

g.   How IKO's warranty needs to be reformed to implement and make effective each of the above declarations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of themselves and all others similarly situated in the United States (or, alternatively, in the State of Pennsylvania), prays the Court enter judgment against Defendants as follows:

(a)  for an order certifying the Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representatives of the Class, and appointing the undersigned law firm representing Plaintiff as counsel for the Class;

(b)  for actual and compensatory damages;

(c)  for punitive damages;

(d)  for equitable and/or injunctive relief;

(e)  for payment of costs of suit herein incurred;

(f)  for both pre-judgment and post-judgment interest on any amounts awarded;

(g)  for payment of reasonable attorneys' fees and expenses as may be allowable under applicable law; and

(h)  for such other and further relief as the Court may deem just and proper.

Dated:  September 30, 2014                  Respectfully submitted,

s/ Jonathan Shub
Jonathan Shub
**Seeger Weiss LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Ph: 215-564-2300
Fax: 215-851-8029
Email: jshub@seegerweiss.com

Howard G. Silverman
**Kane and Silverman P.C.**
2401 Pennsylvania Ave., Suite 1A5
Philadelphia, PA 19130
Ph: (215) 232-1000
Email: HGS@PaLegalAdvice.com

*Attorneys for Plaintiff and the Putative Class*